## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RACHELE CELLA RICHARDSON, ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 12-1771** |
| | * | |
| **GEORGE A. CELLA, III, ET AL.** | * | **SECTION "L" (3)** |

## ORDER AND REASONS

Before the Court are six motions: Defendant's Motion for Partial Summary Judgment on RICO Claims (Rec. Doc. 95); Defendant's Motion for Partial Summary Judgment on Emotional Distress Claims (Rec. Doc. 96); Defendant's Motion for Partial Summary Judgment as to Claims of Brandy Cella on Statute of Limitations Grounds (Rec. Doc. 97); Defendant's Motion for Partial Summary Judgment as to Claims of Rachele Richardson on Grounds of Unclean Hands (Rec. Doc. 98); Plaintiffs' Motion for Adverse Inference (Rec. Doc. 99); Plaintiffs' Motion for Partial Summary Judgment on Conversion (Rec. Doc. 100).  The Court has read the briefs and applicable law and, having heard oral argument on the motions, now issues this order and reasons.

## I.  BACKGROUND

This case arises out of several policy loans that were allegedly taken by Defendant George A. Cella, III on a life insurance policy ("the Policy") issued by Defendant New York Life Insurance Company ("New York Life").  According to their complaint, Plaintiffs Rachele Cella Richardson and Brandy Cella, George Cella's adult daughters, own the Policy, which insures George Cella's life.  Rachele is the sole beneficiary.  (Rec. Doc. 1 at 2).  Plaintiffs allege that Mr. Cella sought and obtained loans under the Policy beginning in 2006.  According to Plaintiffs, Mr.

-1-

Cella filled out New York Life policy loan request forms, supplying Rachele's tax identification number and forging Rachele's and Brandy's names without their knowledge or authorization. (Rec. Doc. 1 at 3).  Plaintiffs further allege that Mr. Cella submitted the forms via facsimile or other wire transmission.  Plaintiffs claim that the loan checks were sent to Defendant's place of business, at which point he endorsed the checks by forging Plaintiffs' signatures and deposited them in his personal checking account.  (Rec. Doc. 1 at 4).  Plaintiffs claim that he did this all while acting as an officer of two family businesses, Horizon Security Vault Complex, Inc. ("Horizon") and A. Levet Properties Partnership ("ALPP").

Plaintiffs assert causes of action against Mr. Cella under the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(a), 1962(b), 1962(c), as well as state law claims for fraud, negligence, breach of contract, and intentional infliction of emotional distress. (Rec. Doc. 1).  In addition, Plaintiffs brought suit against New York Life for breach of contract and negligence in disbursing the loan funds.  (Rec. Doc. 1 at 14).

Defendant George Cella denies that any of the loans were unauthorized or made without Plaintiffs' knowledge and authorization.  (Rec. Doc. 45 at 5).  Defendant claims that Plaintiffs were aware of all loan requests and that many of the loan requests were made by Plaintiffs without any involvement on his part.  (Rec. Doc. 45 at 3).  Defendant admits that he may have signed Plaintiff Brandy Cella's name on some loan request forms, but he claims that he did this with her full knowledge and authorization.  (Rec. Doc. 45 at 3).  Similarly, Defendant claims that many of the loan checks were endorsed by Plaintiffs without any involvement on his part.  (Rec. Doc. 45 at 4).  Defendant admits that he endorsed some of the referenced checks and deposited some of the checks into his personal account.  (Rec. Doc. 45 at 5).  Defendant admits that he acted as an officer of ALPP and Horizon and claims that some of the loan proceeds went toward

benefiting these businesses, which in turn benefited Plaintiffs.  (Rec. Doc. 45 at 2, 7).  Defendant claims that, at all times, he acted in good faith.  (Rec. Doc. 45 at 13).

On August 26, 2013, this Court dismissed Plaintiffs' claims that were brought pursuant to § 1962(a) and § 1962(b) as well as Plaintiffs' fraud claim.  (Rec. Doc. 25).  On February 11, 2014, having been informed by the parties that Plaintiffs and Defendant New York Life reached a settlement, the Court issued a reasonable time dismissal as to Defendant New York Life.  (Rec. Doc. 109).

## II. PRESENT MOTIONS:

Five motions for partial summary judgment are before this Court.  Federal Rule of Civil Procedure Rule 56 states that a court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law."  *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**A. Motion for Partial Summary Judgment on RICO Claims by Defendant (Rec. Doc. 95).**

*1. Summary of Motion*

Defendant George Cella asks this Court to grant summary judgment as to Plaintiffs' remaining RICO claim, 18 U.S.C. § 1962(c).  Defendant argues that RICO subpart (c) requires Plaintiffs to prove that there was a "pattern of racketeering activities" and that there was reliance on Defendant's alleged acts of mail or wire fraud.  According to Defendant, Plaintiffs have put forth no evidence to support the RICO "pattern" requirement, because the scheme involved in this case was very narrow and involved a limited number of participants and victims.  Further, Defendant argues that Plaintiffs have put forth no evidence that they personally relied upon any acts constituting mail or wire fraud, as required by RICO.  Defendant also argues that because the remaining RICO claim is the only basis for subject-matter jurisdiction, this Court should decline to exercise jurisdiction over the state-law claims and should dismiss the case.

In opposition, Plaintiffs claim that there are sufficient facts to indicate that Defendant's actions constituted a "pattern of racketeering activity."  Plaintiffs claim that this court, in *Webster v. New York Life Insurance Company*, held that a very similar set of facts was sufficient basis for a RICO claim to survive summary judgment.  No. Civ.A. 96-0557, 1998 WL 28261 (E.D. La. Jan. 16, 1998).  According to Plaintiffs, in order to establish a "pattern" the acts must be "related" and have "continuity."  Plaintiffs point to sixteen separate acts of wire or mail fraud.  Plaintiffs claim that these acts of fraud, coupled with a subsequent fraudulent inducement of a loan, satisfy these requirements and therefore constitute a "pattern of racketeering activity."  Plaintiffs also argue that the United States Supreme Court explicitly rejected Defendant's argument that a plaintiff must show reliance in order to assert a RICO claim in *Bridge v. Phoenix*

-4-

*Bond & Indemnity Co.*, 553 U.S. 639, 648 (2008).  Instead, Plaintiffs claim that 18 U.S.C. §

1964(c) only requires them to show that they were injured and that the injury was a proximate

cause of Defendant's RICO activity.  Plaintiffs argue that they have satisfied this requirement by

showing that Defendant's forgery resulted in direct harm to them.

   *2. Law & Analysis*

  As an initial matter, Defendant concedes that in light of the Supreme Court's decision in

*Bridge*, summary judgment on the issue of reliance would not be appropriate.  Therefore, the

Court will focus only on the "pattern" requirement imposed by RICO.

  The Racketeer Influence and Corrupt Organizations Act ("RICO") was enacted by

Congress as "an aggressive initiative to supplement old remedies and develop new methods for

fighting crime."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (1985).  The Supreme

Court noted that while part of the impetus behind RICO was the desire to use it against

"mobsters and organized criminals," it has developed into a "tool for everyday fraud cases

brought against 'respected and legitimate enterprises.'"  *Id.* (quoting *Sedima, S.P.R.L. v. Imrex

Co., Inc.*, 741 F.2d 482, 487 (2nd Cir. 1984)).  The Supreme Court recognized that "RICO is

evolving into something quite different from the original conception of its enactors," however,

the Court explained that any remedy for this must come from Congress.  *Id.* at 499.

  With this background in mind, the Court turns to the specific provision of the statute at

issue in this case.  18 U.S.C. § 1962(c), provides that "[i]t shall be unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

RICO defines the term "pattern of racketeering activity" as requiring the commission of at least

-5-

two predicate racketeering offenses over a ten year period. *See* 18 U.S.C. § 1961(5). Included in

the list of predicate racketeering offenses are mail fraud and wire fraud. 18 U.S.C. § 1961(1).

The Supreme Court determined that "Congress had a more natural and commonsense approach

to RICO's pattern element in mind, intending a more stringent requirement than proof simply of

two predicates, but also envisioning a concept of sufficient breadth...." *H.J. Inc. v. Northwestern*

*Bell Telephone Co.*, 492 U.S. 229, 237 (1989). The Court interpreted this requirement to include

two elements: relatedness and continuity. *Id.* at 239. "Predicate acts are 'related' if they 'have the

same or similar purposes, results, participants, victims, or methods of commission, or otherwise

are interrelated by distinguishing characteristics and are not isolated events.'" *In re Stanislaw R.*

*Burzynski, M.D.*, 989 F.2d 733, 742 (5th Cir. 1993) (quoting *H.J. Inc.*, 492 U.S. at 240).

Continuity is a "temporal concept." *H.J. Inc.*, 492 U.S. at 242. "'Continuity' is both a closed-

and open-ended concept, referring either to a closed period of repeated conduct, or to past

conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (citing

*Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3rd Cir. 1987)). "A

party alleging a RICO violation may demonstrate continuity over a closed period by proving a

series of related predicates extending over a substantial period of time." *Id.* Whether the acts

establish a threat of "continued racketeering activity" is a fact specific inquiry. *Id.* at 242.

There are genuine issues of material fact as to whether the Defendant's conduct in the

present case constitutes a pattern of racketeering activity. Plaintiffs produced sixteen loan

requests that they claim they did not authorize or know about, despite being the owners of the

Policy. (Rec. Docs. 114-8; 114-5). The first unauthorized loan request was submitted to New

York Life on May 22, 2006 and the last was submitted six years later, on February 13, 2012.

(Rec. Doc. 114-5 at 4-5). Plaintiffs also presented the deposition testimony of Defendant's

former employee, Brenda Marrero, who testified that the Defendant asked her to sign Plaintiff

Rachele Richardson's name on these loan request forms. (Rec. Doc. 114-3 at 3). Ms. Marrero

also testified that the Defendant signed Plaintiff Brandy Cella's name on at least some of the loan

requests. (Rec. Doc. 114-3 at 8). As a result of these loan requests, New York Life sent over

$300,000.00 worth of checks to Horizon, made payable to Plaintiffs. (Rec. Doc. 114-11). These

checks were endorsed with Plaintiffs' signatures, (Rec. Doc. 114-11), but Plaintiffs claim that

they never signed, and did not know about, these checks. (Rec. Docs. 114-5; 114-6). Fourteen

of the checks were deposited directly into Defendant's personal bank account, according to a

copy of the canceled checks. (Rec. Doc. 114-11). Defendant claims that the proceeds of these

loans were used for the LLCs that he owned. (Rec. Doc. 114-2 at 7).

Based on this evidence, a reasonable jury could find that the Defendant took part in mail

or wire fraud that was both related and continuous. Plaintiffs claim that the sixteen unauthorized

loan requests constitute the predicate racketeering acts. Each of these acts involved "the same or

similar purposes, results, participants, victims, or methods of commission…." *See In re*

*Burzynski*, 989 F.2d at 742. In fact, each act was almost identical. Accordingly, assuming

Plaintiffs' allegations are true, the sixteen unauthorized loan requests are related. Similarly,

Plaintiffs have put forth sufficient evidence to indicate that these acts meet RICO's continuity

requirement. The sixteen loan requests extended over six years, "a substantial period of time."

*See H.J. Inc.*, 492 U.S. at 242 ("A party alleging a RICO violation may demonstrate continuity

over a closed period by proving a series of related predicates extending over a substantial period

of time."); *see also Wardlaw v. Whitney Nat. Bank*, 74 F.3d 1237, *1 (5th Cir. 1995) ("a 'pattern'

could be established by a closed period of repeated conduct"). A reasonable jury could find that

-7-

the Defendant was engaged in a closed period of repeated conduct, and therefore, RICO's

continuity requirement has been met.[1]

Defendant urges the Court to evaluate more than the acts' relatedness and continuity.

Defendant points to numerous decisions in other circuits in which courts have adopted multi-

factor tests for determining whether a pattern of racketeering activity has been shown.  For

instance, in *U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, the Seventh Circuit stated

> …this circuit has adopted and followed a fact-specific, multifactor
> approach in determining whether a particular defendant's conduct
> constitutes a 'pattern' for purposes of the RICO statute.
> Specifically, we have held that four factors should be considered in
> making this determination: (1) the number and variety of predicate
> acts and the length of time over which they were committed; (2)
> the number of victims; (3) the presence of separate schemes; and,
> (4) the occurrence of distinct injuries.

*U.S. Textiles*, 911 F.2d 1261, 1266 (7th Cir. 1990) (citing *Morgan v. Bank of Waukegan*, 804

F.2d 970, 975 (7th Cir. 1986)).  The Seventh Circuit found that the Supreme Court's decision in

*H.J. Inc.*, which held that it is not necessary to show more than one scheme in order to prove a

RICO pattern, did not change the multi-factor test that the Seventh Circuit had developed.  *Id.* at

1267.  Instead, the Seventh Circuit interpreted *H.J. Inc.* as requiring that the court analyze the

various factors "with an eye towards achieving a 'natural and common sense' result."  *Id.* at

1267.

Similarly, the D.C. Circuit has developed a list of six factors that it evaluates in deciding

whether a RICO pattern has been established.  *Western Associates Ltd. Partnership, ex rel. Ave.*

---

[1] Plaintiffs also claim that they have satisfied the requirements for a showing of open-continuity.  Defendant argues that the evidence that Plaintiffs have put forth, regarding a forged application for a bank loan, constitutes a new claim that cannot be raised at the summary judgment stage.  Because this Court finds that Plaintiffs have put forth sufficient evidence to satisfy closed-continuity, there is no need to address these arguments.

*Associates Ltd. Partnership v. Market Square Associates*, 235 F.3d 629, 633 (D.C. Cir. 2001). "These factors are: 'the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.'" *Id.* at 633 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263 (D.C. Cir. 1995)).

The Fifth Circuit has not developed a similar multi-factor test for establishing whether acts constitute a pattern of racketeering activity.  Therefore, while the analysis done in other circuits is instructive, it is not binding on this Court.  Furthermore, even if the Court were to analyze the factors suggested by the D.C. Circuit, there is still sufficient evidence to support the conclusion that a pattern of racketeering activity took place sufficient to satisfy the requirements of RICO.  According to Plaintiffs allegations, the number of unlawful acts—sixteen—is large, and the length of time over which the acts were committed—almost six years—is extensive.  *See Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (finding that Plaintiffs had sufficiently pled continuity of racketeering activity where the scheme lasted two years).  The alleged acts were all similar, if not identical, in nature.  The unlawful activity that Plaintiffs allege involved repeated forgery on loan documents in order to obtain unauthorized loans, supposedly for business purposes.  There were at least two, if not more, perpetrators as well as two companies involved.  Plaintiffs, as owners of the Policy, were victims of each of these acts.  New York Life can also be considered a victim because it was forced to expend time and resources as part of this litigation that stemmed from the loan requests.  While the number of victims is relatively small, "this factor cannot be dispositive of any 'pattern' determination."  *U.S. Textiles*, 911 F.2d at 1268.

-9-

According to the "commonsense approach" established in *H.J. Inc.*, as well as a multi-factor structured approach used in other circuits, Plaintiffs have presented evidence sufficient for a reasonable jury to find that RICO's pattern requirement has been met here.  For this reason, Defendant's motion for summary judgment on the RICO claim is denied.

**B. Motion for Partial Summary Judgment on Claims for Intentional Infliction of Emotional Distress (Rec. Doc. 96).**

*1.     Summary of Motion*

Defendant argues that if this Court grants his first motion, and dismisses Plaintiffs' RICO claims, then the Court should also dismiss all of Plaintiffs' state-law claims.  Even if this Court does not dismiss Plaintiffs' RICO claims, Defendant argues that this Court should grant partial summary judgment on Plaintiffs' emotional distress claims.  According to Defendant, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  (Rec. Doc. 96-1 at 3) (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).  Defendant argues that Plaintiffs have put forth no evidence of such extreme or outrageous conduct.  Further, Defendant argues that Plaintiffs are unable to establish the existence of severe distress caused by the loans.  According to Defendant, Plaintiff Brandy Cella suffered from anxiety and depression for many years before becoming aware of the loans and Rachele Richardson has seen no medical professionals and has taken no medication for any emotional distress.  (Rec. Doc. 96-1 at 4).

In opposition, Plaintiffs agree with Defendant's statement of the elements required to prevail on a claim for intentional infliction of emotional distress.  (Rec. Doc. 112 at 3).  However, Plaintiffs claim that Defendant's conduct was "extreme and outrageous."  Plaintiffs

argue that the special relationship involved here, between a father and his daughters, should be taken into consideration when evaluating the outrageous nature of Defendant's behavior. Plaintiffs claim that Defendant's behavior becomes even more reprehensible, extreme, and outrageous when you view the behavior in light of the familial connection.  (Rec. Doc. 112 at 6). In response to Defendant's argument about Plaintiffs' inability to prove severe distress, Plaintiffs argue that Louisiana Courts do not require medical bills and doctor visits in order to determine that severe emotional distress was suffered.  Plaintiffs also point to decisions from other jurisdictions, in which courts found that no physical manifestation was necessary at all. Plaintiffs argue that there is at least a genuine issue of material fact as to the level of emotional distress that Plaintiffs' experienced.  Lastly, Plaintiffs claim that the emotional distress that they experienced was virtually certain to occur, thereby satisfying the third elements of this claim. (Rec. Doc. 112 at 10).

2.    <em>Law & Analysis</em>

The Louisiana Supreme Court has held that "[o]ne who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *White*, 585 So. 2d at 1209.  "[I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."  *Id.*  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*  "It has not been

-11-

enough that the defendant has acted with an intent which is tortuous or even criminal, or that he

has intended to inflict emotional distress, or even that this conduct has been characterized by

'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for

another tort." *Nicholas v. Allstate Ins. Co.*, 1999-2522, (La. 8/31/00); 765 So. 2d 1017, 1021

(quoting Restatement (Second) of Torts § 46 (1965)).  "Liability can arise only where the actor

desires to inflict severe emotional distress or where he knows that such distress is certain or

substantially certain to result from his conduct.  The conduct must be intended or calculated to

cause severe emotional distress and not just some lesser degree of fright, humiliation,

embarrassment, worry, or the like." *White*, 585 So. 2d at 1210 (citing Restatement (Second) of

Torts § 46 (1965)).

Plaintiffs have failed to put forth sufficient evidence to satisfy the third element of this

tort.  Plaintiffs allege that Defendant signed their names on loan authorization forms without

their knowledge.  (Rec. Docs. 114-6 at 3; 114-5 at 3).  Plaintiffs admit that the Policy's

premiums were paid by ALPP and Horizon.  (Rec. Docs. 114-5 at 1; 114-6 at 1).  Plaintiff

Rachele Richardson claims that from 2000 to 2005, she would sign her signature on similar

policy loan requests.  (Rec. Doc. 114-5 at 3).  Rachele claims that she stopped working at

Horizon in 2005.  (Rec. Doc. 114-5 at 5).  Plaintiffs allege that after Rachele stopped working at

Horizon, Defendant continued to request policy loans without the authorization of either

Plaintiff.  (Rec. Doc. 114-5 at 5; 114-6 at 4).  Rachele testified that she does not recall what the

authorized loans were used for, but that usually she and her father took loans out if the

companies needed money.  (Rec. Doc. 98-5 at 2, 3) ("It would be for what specific purpose he

needed it or the companies needed it.  Like if a company was short, then put money in it").  The

proceeds of at least some of the loans were put into the family companies.  (Rec. Docs. 98-5 at 2;

-12-

112-6 at 7).  Even if Defendant did forge his daughters' signatures on loan requests, the evidence does not support a conclusion that he did so with the intent to cause his daughters severe emotional distress, or even with the knowledge that such a result would be certain to occur.  The Defendant allegedly used company funds to pay the premiums for the Policy and then took loans out on the Policy.  The evidence indicates that this was done with the purpose of obtaining money for the companies or even for his own personal needs, not in order to cause severe emotional distress.  Furthermore, the fact that this practice was common while Rachele was working at Horizon cuts against any claim that severe emotional distress was certain to occur. Based on all of the evidence that Plaintiffs have put forth, they have failed to make a showing sufficient to satisfy the third element of the tort.  Therefore, summary judgment is appropriate as to Plaintiffs' intentional infliction of emotional distress claim.

###    C.  Motion for Partial Summary Judgment as to Plaintiff Brandy Cella on Statute of Limitations (Rec. Doc. 97).

####    *1.  Summary of Motion*

Defendant argues that Plaintiff Brandy Cella's RICO claim and state law claims should be barred on statute of limitations grounds.  Defendant explains that there is a four-year statute of limitations that applies to RICO claims.  According to Defendant, the evidence establishes that in 2006 the loan proceeds of two of the loans that were identified in the complaint were deposited into Plaintiff Brandy Cella's checking account.  Defendant argues that because of these deposits Brandy Cella knew, or should have known through the exercise of reasonable diligence, about the policy loans in question in 2006.  Defendant also argues that Brandy Cella's state-law claims are time-barred, because there is a one-year prescriptive period for delictual actions running from the date of the injury or the date when the damages were sustained.  (Rec. Doc. 97-1 at 6).

In opposition, Plaintiffs argue that Brandy Cella was completely unaware of the policy loans until 2012, when her sister Rachele Richardson told her about them.  Plaintiffs claim that the deposits that were made into Brandy's bank account were withdrawn on the same day, leaving her no time to notice the deposits.  (Rec. Doc. 115 at 1).  Plaintiffs also claim that the bank statements for the bank account were mailed to Defendant's office at 4545 Veterans Memorial Boulevard.  Plaintiffs also argue that the 2006 loans that were deposited into Brandy's bank account constituted "separate" transactions and that under the "separate accrual rule" the statute of limitations for claims regarding the other fourteen loans did not start to run until the injury was discovered.  As to the state-law claims, Plaintiffs argue that the doctrine of *contra non valentum* applies here and extends the prescription period, which in Louisiana is generally one year from the date of the injury.  Plaintiffs claim that this doctrine applies when the cause of action is not reasonably knowable to the plaintiff.  Furthermore, Plaintiffs argue that the "continuing tort" doctrine applies when, as here, continuous conduct causes continuing damages.  Plaintiffs claim that according to either doctrine, the prescriptive period did not begin to run until February or March of 2012.

### 2.  Law & Analysis

#### a.  RICO Statute of Limitations

There is a four year statute of limitations for civil RICO claims.  *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  The Fifth Circuit applies the "injury discovery accrual rule," which starts the clock when a plaintiff knew or should have known of his injury.  *See Rotella v. Wood*, 528 U.S. 549, 553 (2000) (summarizing the Fifth Circuit's approach); *see also DeShazo v. Nations Energy Co. Ltd.*, 07-20351, 2008 WL 2228843, at *4 (5th Cir. May 29, 2008).

Whether Plaintiff Brandy Cella knew, or should have known, about the policy loans in 2006 is a disputed factual issue.  Defendant claims that she should have known about the loans because two loan checks were deposited into her checking account in May and June of 2006. According to Defendant, this should have put her on notice that something was amiss, causing her to investigate the deposits and ultimately find out that her father was taking unauthorized loans against the Policy.  Plaintiff Brandy Cella claims that she did not know about those deposits and that the bank statements for that checking account were mailed to the Defendant's place of business.  (Rec. Doc. 115-3 at 5).  Brandy Cella claims that Defendant never gave her the bank statements and that she never checked the statements or the account's balance until this litigation began.  (Rec. Doc. 115-3 at 5).  Plaintiffs also emphasize that the money was withdrawn from the checking account on the very same day that it was deposited, therefore, giving Brandy Cella no time to notice the deposits.  (Rec. Doc. 115 at 6).  There is a genuine dispute as to whether Brandy Cella knew or should have known about the 2006 loans.

Defendant urges this Court to adopt the doctrine of "inquiry notice" that has been used by courts in the securities fraud context.  (Rec. Doc. 97-1 at 3).  According to Defendant, customers are on inquiry notice of the contents of their own account statements, regardless of whether they actually read those statements.  (Rec. Doc. 97-1 at 3).  However, the cases that Defendant cites still discuss what a reasonably diligent person would have done under the circumstances involved in the case.  *See Ebrahimi v. E. F. Hutton & Co., Inc.*, 852 F.2d 516, 523 (10th Cir. 1988) ("In this case, however, the statements remained unopened for several years.  A reasonable investor under these circumstances would not have completely ignored these statements…These statements contained information which would have alerted the investor, at the very least, that something may have been amiss." (citations omitted)).  The First Circuit explained that the facts

-15-

that trigger inquiry notice are "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale." *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 802 (1st Cir. 1987).

Even under the doctrine of inquiry notice, it is unclear whether a reasonably diligent person would have discovered the deposits, given the circumstances in this case.  Plaintiffs' version of the facts indicates that Defendant took on a decision-making role with respect to financial decisions made for the family and the family businesses.  *See* (Rec. Doc. 111-6 at 5). This is consistent with the fact that Brandy Cella's bank statement was sent to Defendant at his place of business.  (Rec. Doc. 115-3 at 5).  There are questions of fact as to whether the two deposits, and immediate withdrawals, on the bank statements constitute "sufficient storm warnings" to alert Brandy Cella that unauthorized loans were being taken out on the Policy. Accordingly, summary judgment is not appropriate.[2]

### b.  State Law Statute of Limitations

Under Louisiana law, there is a one-year prescription period for delictual actions that begins to run from the date of the injury or when damage is sustained.  *See Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).  "When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing why the claim has not prescribed."  *Id.* Courts created an exception to the general rules of prescription called *contra non valentum.  Id.*  The Louisiana Supreme Court described this doctrine in detail:

> Generally the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:

_____

[2] Having found that there are issues of material fact regarding Brandy Cella's knowledge of the first two loans, the Court does not need to address whether the separate accrual rule would extend the statute of limitations for the remaining loans.

-16-

1.      Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
2.      Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
3.      Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
4.      Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Wimberly*, 635 So. 2d at 206.  The fourth category is relevant for the purposes of this case.[3]  The Louisiana Supreme Court, elaborating on the fourth category, explained that "prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based… Hence, prescription does not accrue as it does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable." *Id.* (citations omitted) (citing *Griffin v. Kinberger*, 507 So. 2d 821 (La. 1987); *Lott v. Haley*, 370 So. 2d 521 (La. 1979); *In Re Medical Review Panel of Howard*, 573 So. 2d 472 (La. 1991); *Young v. Clement*, 367 So. 2d 828 (La. 1979)).  "Prescription begins to run when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that it was the victim of tortious conduct." *Kendall Co. v. Southern Medical Supplies, Inc.*, 913 F.Supp. 483, 488 (E.D. La. 1996).

---

[3] Plaintiffs very briefly state that the third category applies in this case as well.  (Rec. Doc. 115 at 7).  The Louisiana Supreme Court explained that "[t]he third category applies to cases where defendant engages in conduct which prevents the plaintiff from availing himself of his judicial remedies." *Wimberly*, 635 So. 2d at 211.  Plaintiffs have not alleged any actions on Defendant's part that prevented Plaintiffs from availing themselves of judicial remedies.  Furthermore, since the Court finds that the fourth category applies here, it is unnecessary to fully address the third category.

For the reasons discussed above, there are material issues of fact as to whether Plaintiff Brandy Cella discovered, or should have discovered through reasonable diligence, the loans in 2006.  Accordingly, summary judgment is not appropriate.[4]

### D.  Motion for Partial Summary Judgment as to Plaintiff Rachele Richardson on Grounds of Unclean Hands (Rec. Doc. 98).

#### 1.  Summary of Motion

Defendant argues that the doctrine of unclean hands/*in pari delicto* prevents Plaintiff Rachele Richardson from bringing the present lawsuit.  Defendant claims there is no issue of material fact as to Rachele Richardson's participation in obtaining loans from the same life insurance policy without her sister, Brandy Cella's, knowledge.  According to Defendant, Plaintiffs only complain about sixteen unauthorized loan requests, however, there were another sixteen policy loans obtained before May 2006 that Plaintiffs do not take issue with in their complaint.  Defendant claims that this is because Plaintiff Rachele Richardson was involved in the first sixteen without Brandy Cella's knowledge.

Plaintiffs argue that Defendant's unclean hands defense fails because he does not allege any bad faith on the part of Plaintiff Rachele Richardson.  Plaintiffs point to the deposition testimony of Rachele Richardson, in which she stated that she never signed Brandy's name on the loan requests.  Instead, Plaintiffs claim that Defendant presented the loan requests to Rachele with Brandy's name already on them.  Plaintiffs also argue that Defendant has failed to allege any damages as a result of the alleged acts of Rachele Richardson, which is a requirement of the

---

[4] Because the Court finds that there are issues of material fact regarding the application of *contra non valentum*, it is unnecessary to address Plaintiffs' alternate argument regarding the doctrine of "continuing tort."

unclean hands defense.  (Rec. Doc. 113 at 3).  Lastly, Plaintiffs argue that the unclean hands defense does not apply to a claim for monetary damages, such as the ones made in this lawsuit.

### 2.  Law & Analysis

"Unclean hands" is an equitable doctrine.  *See Byron v. Clay*, 867 F.2d 1049, 1052 (7th Cir. 1989).  The counterpart legal doctrine is known as "*in pari delicto*."  *Id.*  The Fifth Circuit has explained that the *in pari delicto* defense "embodies 'the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct,' and is undergirded by the concerns, 'first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.'"  *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).  In *Rogers v. McDorman*, the Fifth Circuit held that this was a cognizable defense in civil RICO claims.  *Id.* at 387.

In *Bateman Eichler, Hill Richards, Inc. v. Berner*, the Supreme Court explained what elements are required for the defense of *in pari delicto* in the securities enforcement context. 472 U.S. 299 (1985).  The Court stated that "a private action for damages in these circumstances may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."  *Bateman*, 472 U.S. at 311; *see also Rogers*, 521 F.3d at 390 (affirming the district court's application of the "substantially equal responsibility" standard).  In *Bateman*, the Supreme Court found that the doctrine did not apply to a lawsuit brought by a group of investors against a securities broker. The Court found that the evidence indicated that the defendants "masterminded" the scheme to

manipulate the securities market.  *Id.* at 314.  The Court explained that *in pari delicto* did not apply in this case because the defendants were more culpable.  *Id.*

At the very least, there are issues of material fact in the present case regarding Plaintiff Rachele Richardson's culpability.  Rachele Richardson claims that she did not know that Brandy's signatures on the first set of loan request forms were forged.  (Rec. Doc. 114-5 at 3).  Furthermore, even if she did know that Brandy's signatures were forged, this does not make her equally as culpable as Defendant.  According to Plaintiffs, Rachele Richardson signed policy loan request forms when they were presented to her by Defendant.  (Rec. Doc. 114-5 at 3).  Plaintiffs also allege that Defendant forged both of their names on the second set of loans as well as the checks that he received from New York Life and used the money as he saw fit.  (Rec. Docs. 114-5 at 5; 114-6 at 4).  Assuming Plaintiffs' allegations are true, Defendant was the mastermind behind the scheme and was, therefore, more culpable than Rachele Richardson.  For these reasons, summary judgment is not appropriate on the basis of *in pari delicto*.

### E.  Motion for Adverse Inference or other Sanctions for Spoilation of Evidence (Rec. Doc. 99).

#### 1.  Summary of Motion

Plaintiffs claim that Defendant forged sixteen policy loan requests but has been unable to produce two of the original requests, dated June 12, 2006 and February 26, 2007.  Plaintiffs believe that these two loan requests were produced by using white-out on other requests.  Plaintiffs ask for an adverse inference against Defendant at trial or other monetary sanctions.  Plaintiffs claim that in order to establish the sanction of adverse inference, they need to show 1) Defendant had a duty to preserve the evidence; 2) a culpable breach of that duty; and 3) Plaintiff was prejudiced as a result.  Plaintiffs claim that all of the original loan requests were kept at

-20-

Defendant's office in a file.  Plaintiffs claim that one of Defendant's employees recalls seeing these two loan documents around the time that the lawsuit was filed.  Plaintiffs argue that Defendant had a duty to preserve these documents, which he acknowledged by preserving the other loan request documents.  Plaintiffs claim that Defendant breached this duty in bad faith and that they were prejudiced by the breach.  In the alternative, Plaintiffs ask for monetary sanctions in the amount of $13,828.00, which includes the cost of the forensic expert, deposition transcripts, and attorneys' fees involved in the present motion.

In opposition, Defendant argues that Plaintiffs cannot establish any of the three elements necessary for an adverse inference.  (Rec. Doc.110).  First, Defendant argues that a duty to preserve arises when litigation is anticipated.  Here, Defendant points out that the loan documents in question are between seven and eight years old.  Defendant claims that Plaintiffs cannot prove when these documents were destroyed.  Furthermore, Defendant argues that Plaintiffs can not prove that the documents were lost through a culpable act.  Defendant emphasizes that he did not have exclusive control over the building where the documents were stored and that he was temporarily ousted from the building entirely.  Defendant also argues that Plaintiffs have suffered no prejudice from the originals because they have photocopies of the loan requests.  Lastly, Defendant claims that a monetary sanction is similarly inappropriate here because there is no basis to conclude that Defendant lost or destroyed the documents.

### 2.  Law & Analysis

Spoilation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  A federal court

has the power to sanction a party who has destroyed evidence.  *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 611 (S.D. Tex. 2010) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993)).  "The party seeking the sanction bears the burden of proof."  *Hunt v. Marquette Transp. Co. Gulf-Inland, LLC*, 09-6055, 2011 WL 3924926 (E.D. La. Aug. 5, 2011) (citing *Rimkus*, 688 F.Supp.2d at 615-16).  "In order to establish the sanction of adverse inference based on spoliation of evidence, this party must show that the accused had a duty to preserve the destroyed or altered evidence, a culpable breach of that duty, and resulting prejudice to the party seeking the sanction."  *Id.* (citing *Rimkus*, 688 F.Supp.2d at 615-16); *see also Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999) ("an adverse inference drawn from the destruction of records is predicated on bad conduct by the defendant").

Plaintiffs have not met their burden of proving that Defendant destroyed the two loan request forms through some bad or culpable act.  The loan request forms in question are dated June 12, 2006 and February 26, 2007.  (Rec. Doc. 99-1 at 2).  Accordingly, these forms are over seven years old.  Plaintiffs believe that these two forms were fabricated by altering the date on a different policy loan request with correction tape.  (Rec. Doc. 99-1 at 2).  They have hired a forensic document examiner, Robert G. Foley, who states in his report that the June 2006 and February 2007 loan forms are altered copies of a form dates May 22, 2006.  (Rec. Doc. 99-8 at 2).  The only evidence that Plaintiffs have regarding the existence of the original documents is a statement made be Defendant's former employee Brenda Marrero in a declaration.  (Rec. Doc. 99-8 at 4).  Brenda Marrero states that Defendant kept all of the policy loan requests and other documents in his desk drawer.  Ms. Marrero states that "there were approximately two policy loan requests that contained white-out on the dates by the purported signatures of Rachele

Richardson and Brandy Cella." (Rec. Doc. 99-8 at 4). She also states that she recalls seeing these two documents "at or around" the time that this lawsuit was filed. (Rec. Doc. 99-8 at 4). While Ms. Marrero's statement may be suggestive, it is insufficient to prove that the Defendant purposefully and wrongfully destroyed the loan request forms in anticipation of this litigation. Because Plaintiffs have failed to prove misconduct by the Defendant, Plaintiffs' motion for adverse inference or monetary sanctions is denied. Furthermore, Plaintiffs have failed to prove prejudice since they have copies of the documents and will be able to show a jury, through use of an expert, that the documents were altered.

### F.  Motion for Partial Summary Judgment on Conversion (Rec. Doc. 100).

#### 1. Summary of Motion

Plaintiffs ask the Court to grant partial summary judgment on their claim for conversion. Plaintiffs claim that from February 2007 until February 2013, Defendant converted $272,000.00 of funds from the New York Life whole life insurance policy that they jointly owned. According to Plaintiffs, in Louisiana the tort of conversion is an "intentional act done in derogation of the plaintiff's possessory rights." Plaintiffs argue that there are no genuine issues of material fact regarding Defendant's conversion of $272,000.000 of Plaintiffs' insurance policy.

In opposition, Defendant urges the Court to grant his motion for partial summary judgment as to Plaintiffs' RICO Claims and dismiss the remaining state-claims. (Rec. Doc. 100). Defendant argues that even if the Court reaches the merit of this motion, it should still be denied. Defendant argues that there are genuine issues of material fact regarding whether Defendant had authority to take loans out against the Policy on Plaintiffs' behalf. Lastly, Defendant argues that even if his actions satisfied the tort of conversion, the Plaintiffs should be estopped from bringing a claim for conversion because they consented to and ratified the loans in question.

-23-

2. *Law & Analysis*

Under Louisiana law, "[a] conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985). "In order to prevail on a claim of conversion under Louisiana law, the plaintiff must prove that (1) he owned or had the right to possess; (2) the defendant's use was inconsistent with the plaintiff's right of ownership; and (3) the defendant's use constituted a wrongful taking." *Gaunt v. Louisiana Citizens Property Ins. Corp.*, 512 F.Supp.2d 493, 498 (E.D. La. 2007). "[W]hen the owner consents to or ratifies the taking of his property, he is estopped from bringing an action for conversion." *Id.* (citing *Blair v. Source One Mortgage Services Corp.*, 1997 WL 250040 (E.D. La. 5/9/1997). As the Louisiana First Circuit Court of Appeals explained,

> …one who might otherwise be entitled to maintain an action for the conversion of his goods may afford the alleged wrongdoer a complete defense to the action by waiving the right to treat the act as wrongful, or by ratification thereof. If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion of the property. In other words, the right to sue in conversion may be defeated by any act or conduct which amounts to an estoppel.

*Aymond v. State, Dept. of Revenue and Taxation*, 95-1663 (La. App. 1 Cir. 4/4/96); 672 So. 2d 273, 276 (citations omitted) (citing 18 Am Jur 2d, Conversion § 102 at 217; 89 CJS, Trover & Conversion § 5 at 535 (1955); 89 CJS, Trover & Conversion § 88 at 583).

Several issues of material fact exist that preclude summary judgment on Plaintiffs' conversion claim. Defendant explains that he was the original owner of the Policy. (Rec. Doc. 111-2 at 1). The premiums for the Policy were paid by the family companies, ALPP and

Horizon. (Rec. Doc. 114-5 at 1). In 1998, Defendant transferred ownership to his daughters, Plaintiffs Rachele Richardson and Brandy Cella. Defendant claims that he was relying on the advice of a New York Life agent, but that he and his daughters knew that he would continue to control the Policy despite the change of ownership. (Rec. Doc. 111-2 at 1). Defendant continued to pay the premiums for the Policy using funds from ALPP and Horizon. (Rec. Doc. 111-2 at 2). Plaintiff Rachele Richardson testified in her deposition that many of the loans that she authorized were used to help the family businesses when cash was short. (Rec. Doc. 98-5 at 2). Plaintiff Rachele Richardson stated that from 2000 until 2005 she signed her name on several loan requests that the Defendant presented to her. (Rec. Doc. 114-5 at 3). The Defendant claims that both Plaintiffs gave him authority over the Policy and that Plaintiff Rachele Richardson knew that once she stopped working at Horizon the Defendant would continue to take loans out on the Policy as he had been doing. (Rec. Doc. 111-2 at 2). Plaintiffs deny having given him this authority. (Rec. Docs. 114-5 at 5; 114-6 at 4). This is a substantial issue of material fact that is in dispute. A reasonable jury could find that Plaintiffs ratified the Defendant's actions by expressly or impliedly assenting to his control over the Policy. Therefore, Plaintiffs' motion for summary judgment is denied.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment on RICO Claims (Rec. Doc. 95); Defendant's Motion for Partial Summary Judgment as to Claims of Brandy Cella on Statute of Limitations Grounds (Rec. Doc. 97); Defendant's Motion for Partial Summary Judgment as to Claims of Rachele Richardson on Grounds of Unclean Hands (Rec.

Doc. 98); Plaintiffs' Motion for Adverse Inference (Rec. Doc. 99); and Plaintiffs' Motion for

Partial Summary Judgment on Conversion (Rec. Doc. 100) are hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment

on Claims for Intentional Infliction of Emotional Distress, (Rec. Doc. 96), is hereby

**GRANTED.**

New Orleans, Louisiana, this 26th day of February, 2014.

_____

UNITED STATES DISTRICT JUDGE